**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, MIDWEST OPERATING ENGINEERS HEALTH AND WELFARE FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS, and CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, | |
| *Plaintiffs*, | Case No. 1:19-cv-00811 |
| v. | Hon. Sharon J. Coleman |
| PURDUE PHARMA L.P., PURDUE PHARMA, INC., PURDUE FREDERICK COMPANY, INC., RHODES PHARMACEUTICALS, CEPHALON, INC., TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., ENDO INTERNATIONAL PLC, JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMAEUTICA, INC., NORAMCO, INC., ENDO HEALTH SOLUTIONS, INC., ENDO PHARMACEUTICALS, INC., ALLERGAN PLC, ACTAVIS PLC, WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ACTAVIS PHARMA, INC., ACTAVIS LLC, MALLINCKRODT PLC, MALLINCKRODT LLC, AMERICAN ACADEMY OF PAIN MEDICINE, AMERICAN GERIATRIC SOCIETY, AMERICAN PAIN SOCIETY, AMERISOURCEBERGEN CORPORATION, CARDINAL HEALTH, INC., MCKESSON CORPORATION, PAUL MADISON, and JOSEPH GIACCHINO, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR REMAND TO STATE COURT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

    I.    The Complaint Alleges Violations of State Law Against Non-Diverse Defendants ................................................................2

    II.    The Opioid MDL's Blanket Moratorium On Filings (Including Remand Motions) ................................................................3

    III.    McKesson's "Snap Removal" to Federal Court ........................................4

ARGUMENT ................................................................................................5

    I.    Plaintiffs' Claims Do Not "Arise Under" Federal Law .............................5

        A.    This case does not "necessarily" raise a federal issue ......................7

        B.    No federal issue is "actually in dispute" here ...............................12

        C.    This case does not present any "substantial" federal issues ............13

        D.    Assertion of federal jurisdiction would upset the congressionally approved balance of federal and state judicial responsibilities ......14

    CONCLUSION ................................................................................................16

i

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)................................................................ 11

*Empire Healthchoice Assur., Inc. v. McVeigh*,
  547 U.S. 677 (2006)........................................................ 5, 6, 13, 16

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)............................................................... *passim*

*Gunn v. Minton*,
  568 U.S. 251 (2013)............................................................... *passim*

*Merrell Dow Pharm. Inc. v. Thompson*,
  478 U.S. 804 (1986)............................................................... *passim*

*Smith v. Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921)................................................................ 13

**United States Circuit Court of Appeals Cases:**

*Bennett v. Sw. Airlines Co.*,
  484 F.3d 907, 910 (7th Cir. 2007) ....................................... 6, 7

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005).............................................. 11 n.6

*Collier v. SP Plus Corp.*,
  889 F.3d 894 (7th Cir. 2018) ................................................. 5

*Gilmore v. Weatherford*,
  694 F.3d 1160 (10th Cir. 2012) ........................................ 11 n.6

*Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*,
  756 F.3d 1032 (7th Cir. 2014) ............................................... 7

*In re: Nat'l Prescription Opiate Lit*,
  No. 18-04054 (6th Cir. Feb. 13, 2019) ...............................2 n.1

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  772 F.3d 158 (3d Cir. 2014)................................................. 11

*Meridian Sec. Ins. Co. v. Sadowski*,
  441 F.3d 536 (7th Cir. 2006).................................................. 5

*Morris v. Nuzzo*,
   718 F.3d 660 (7th Cir. 2013) ............................................................ 5

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
   770 F.3d 1010 (2d Cir. 2014).................................................... 11 n.6

*Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*,
   585 F.3d 42 (1st Cir. 2009)......................................................11 n.6

*Schur v. L.A. Weight Loss Centers, Inc.*,
   577 F.3d 752 (7th Cir. 2009) ........................................................... 5

**United States District Court Cases:**

*City of Reno v. Purdue Pharma, L.P.*,
   2018 WL 5730158, (D. Nev. Nov. 2, 2018) ........................... 9 n.5, 15

*City of Worcester v. Purdue Pharma et al.*,
   Case No. 4:18-cv-11958-TSH, Dkt. 36 (D. Mass. Nov. 21, 2018)...............................9 n.5

*Delaware ex rel. Denn v. Purdue Pharma L.P.*,
   No. CV 1:18-383-RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018) ...................... *passim*

*Granite City, IL v. AmerisourceBergen Drug Corp.*,
   2018 WL 3408126 (S.D. Ill. July 13, 2018) ................................1, 6, 10, 15–16

*Granite City, IL v. AmerisourceBergen Drug Corp.*,
   No. 18-CV-1367-SMY-DGW, Dkt. 1-1 (July 9, 2018).................................... 10

*Haith ex rel. Accretive Health, Inc. v. Bronfman*,
   928 F. Supp. 2d 964 (N.D. Ill. 2013) ............................................... 10

*In re Nat'l. Prescription Opiate Litig.*,
   1:17-md-02804 (N.D. Ohio) ........................................................ 3, 4

*In re Nat'l Prescription Opiate Litig.*,
   2018 WL 4019413 (N.D. Ohio Aug. 23, 2018)........................................ *passim*

*In re Nat'l Prescription Opiate Litig.*,
   2019 WL 180246 (N.D. Ohio Jan. 14, 2019)........................................ *passim*

*In re Oxycontin Antitrust Litig.*,
   821 F. Supp. 2d 591 (S.D.N.Y. 2011) .......................................... 10 n.5

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
   2018 WL 2943246 (D.N.M. June 12, 2018).......................................... *passim*

*Oklahoma ex rel. Mike Hunter v. Purdue Pharma, L.P.*,
 No. 18-cv-574-M, dkt. 53 (D. Okla. Aug. 3, 2018) .................................................... 9 n.5

*Tucson Med. Ctr. v. Purdue Pharma LP*,
 2018 WL 6629659 (D. Ariz. Dec. 19, 2018) ...............................................................9 n.5

*Uintah Cty., Utah v. Purdue Pharma, L.P.*,
 2018 WL 3747847 D. Utah Aug. 7, 2018) ........................................................... *passim*

*Vincent v. Quality Addiction Mgmt., Inc.*,
 No. 11-C-205, 2012 WL 404877 (E.D. Wis. Feb. 7, 2012)...................................10 n.5, 12

*W. Virginia ex rel. Morrisey v. McKesson Corp.*,
 No. CV 16-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017)...........................9 n.5, 12

*Weber Cty., Utah v. Purdue Pharma, L.P.*,
 No. 1:18-CV-00089-RJS, 2018 WL 3747846 (D. Utah Aug. 7, 2018) ........................9 n.5

**Statutory Provisions:**

21 U.S.C. § 801 ............................................................................................................... 6

28 U.S.C. § 1331 ............................................................................................................. 5

28 U.S.C. § 1441 ............................................................................................................. 5

42 C.F.R. § 8 ................................................................................................................. 9 n.5

68 Ill. Admin. Code § 1510 ........................................................................................... 8, 10

225 ILCS 120 ............................................................................................................ 8, 10, 15

720 ILCS 570.............................................................................................................. 8, 10

**Other Authorities:**

Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*,
 82 Tul. L. Rev. 2323 (2008) ...................................................................... 4 n.4

Emily Field, *Opioid MDL Judge Says Litigation Track Is A Settlement Aid*, Law360 (May 10,
 2018), https://www.law360.com/articles/1038711/opioid-mdl-judge-says-litigation-track-
 is-a-settlement-aid ................................................................................... 3 n.2

Jeff Overly & Emily Field, *Inside The Opioid MDL's Big Closed-Door Hearing*,
 Law360 (Feb. 1, 2018), https://www.law360.com/articles/1008010/inside-the-opioid-
 mdl-s-big-closed-door-hearing .......................................................................3 n.2

Jeff Overly & Emily Field, *Opioid MDL Judge Sets Litigation Plan, Bashes DEA*,
     Law360 (Apr. 11, 2018), https://www.law360.com/articles/1009123/opioid-mdl-judge-
     sets-litigation-plan-bashes-dea.................................................................................. 3 n.3

## INTRODUCTION

Defendant McKesson Corporation improperly removed this case from the Circuit Court of Cook County. In doing so, it affirmatively represented to this Court that federal jurisdiction exists—based on the so-called "*Grable* exception"— because Plaintiffs' state-law claims stemming from the national opioid epidemic "arise under" federal law. What McKesson intentionally omits from its removal papers, however, is that every single court to consider this exact argument—including the court overseeing the opioid MDL itself—has unequivocally rejected it. *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 (N.D. Ohio Jan. 14, 2019) ("*Kentucky Remand*") ("[Defendant] cannot meet its burden of showing that removal of [the] case was proper under . . . the *Grable* test. Therefore, this Court does not have jurisdiction . . . ."). In fact, the answer is so clear that a federal district court in Illinois recently remanded *sua sponte* a nearly identical case after McKesson filed an indistinguishable removal notice. *Granite City, IL v. AmerisourceBergen Drug Corp.*, 2018 WL 3408126, at *2 (S.D. Ill. July 13, 2018) ("[T]he *Grable* exception does not apply."). The result should be no different in this case.

Indeed, Plaintiffs allege garden-variety Illinois tort claims sounding in fraud and negligence, which fail to implicate any of the *Grable* factors required to exercise jurisdiction. Their claims do not "necessarily raise a stated federal issue." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Much less do they raise one that is both "actually disputed" and "substantial." *Id.* And usurping the authority of Illinois courts to adjudicate this Illinois dispute would disturb the "congressionally approved balance of federal and state judicial responsibilities." *Id.* In other words, McKesson has—as in each case where this gambit has been tried and rejected—failed to show that any of the *Grable* factors are satisfied.

McKesson understands that its removal argument is baseless and cannot ultimately

succeed. But that's not the point. By improperly removing, McKesson seeks to serve a more immediate, insidious purpose: to get the case to federal court just long enough for it to be transferred to the MDL, where an indefinite stay has been imposed—one that has already lasted over a year—on deciding all remand motions like this one. This Court should not endorse such gamesmanship. Instead, for the reasons outlined further below, the case should be remanded to state court where it belongs.[1]

## BACKGROUND

### I.     The Complaint Alleges Violations of State Law Against Non-Diverse Defendants.

Plaintiffs' Complaint ("Compl.") is focused on holding all Defendants accountable for their role in the opioid crises gripping the populations that Plaintiffs serve—crises in which each Defendant played a vital and indispensable role. (Compl. ¶ 13.) The Manufacturer Defendants purposefully and aggressively marketed opioid products, hid unfavorable research, and drummed up support for their use through misleading and fraudulent marketing campaigns. (*Id.* ¶¶ 14–15.) Using funding and guidance from the Manufacturer Defendants, the Front Group Defendants— including one located in Illinois—created a promotional network pushing doctors to prescribe and patients to use opiates for non-cancer pain, publishing materials that deceptively promoted the use of opioids for chronic pain. (*Id.* ¶ 16–17.) The Distributor Defendants failed to serve as an essential check on the diversion and misuse of prescription opioids, failing to implement even the most basic of checks to prevent the flood of pills from entering communities in Illinois that Plaintiffs serve. (*Id.* ¶ 18.) Finally, the Prescriber Defendants—Illinois citizens—operated "pill mills," capitalizing on the conditions the Manufacturer and Distributor Defendants created—

---

[1]       Absent action by this Court, Plaintiffs' chances for quickly obtaining a ruling on their remand motion are all but non-existent. In addition to the year-long stay imposed by the opioid MDL court, the Sixth Circuit recently found it did not have jurisdiction over an attempt by another plaintiff in the opioid MDL to force the court to begin deciding remand motions. *See In re: Nat'l Prescription Opiate Lit*, No. 18-04054 (6th Cir. Feb. 13, 2019).

2

often working directly for or with them—to pass out as many opioid products as they could, including to Plaintiffs' insureds. (*Id.* ¶ 19.) These crises arose because Defendants failed to meet their legal obligations and created a causal chain that directly injured Plaintiffs. (*Id.* ¶¶ 20–22.)

Seeking redress for their injuries, Plaintiffs brought a nine-count Complaint alleging violations solely of state law, including claims for violation of the ICFA, (*id.* ¶¶ 696–722); fraudulent misrepresentation, (*id.* ¶¶ 723–34); insurance fraud, (*id.* ¶¶ 735–46); negligence, (*id.* ¶¶ 747–59); public nuisance, (*id.* ¶¶ 760–71); civil conspiracy, (*id.* ¶¶ 772–94); and unjust enrichment, (*id.* ¶¶ 795–803). All of Plaintiffs' claims against each of the Defendants, whether collectively or against individual groups of Defendants, arise out of the same common nucleus of operative facts and will turn on the same body of evidence.

## II. The Opioid MDL's Moratorium On Filings (Including Remand Motions).

In response to the thousands of complaints filed in federal court, the JPML created the In re National Prescription Opiate Litigation MDL (the "Opioid MDL") in the Northern District of Ohio. *See generally In re Nat'l. Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio). The district judge in that case has put a general pause on motion practice, including a blanket stay on remand motions, and instead focused singularly on settlement efforts (outside of a few bellwether cases aimed at leveraging settlement).[2] *Id.*, dkts. 2, 130 (imposing a "moratorium on all filings," including a stay on all motions to remand brought by non-attorneys general).

Initial reports indicate that settlement efforts do not look promising.[3] To be fair, that is hardly surprising given the scale of the damages at issue, the level of human tragedy involved,

---

[2]     *See* Emily Field, *Opioid MDL Judge Says Litigation Track Is A Settlement Aid*, Law360 (May 10, 2018), https://www.law360.com/articles/1038711/opioid-mdl-judge-says-litigation-track-is-a-settlement-aid; Jeff Overly & Emily Field, *Inside The Opioid MDL's Big Closed-Door Hearing*, Law360 (Feb. 1, 2018), https://www.law360.com/articles/1008010/inside-the-opioid-mdl-s-big-closed-door-hearing.
[3]     Jeff Overly & Emily Field, *Opioid MDL Judge Sets Litigation Plan, Bashes DEA*, Law360 (Apr. 11, 2018), https://www.law360.com/articles/1009123/opioid-mdl-judge-sets-litigation-plan-bashes-dea.

and the wide variety of plaintiffs (e.g., state, county, municipal), defendants (e.g., distributors, manufacturers, pharmacies), substantive laws, and damages theories in play. But the MDL court's refusal to adjudicate any remand motions filed by a non-sovereign threatens injustice in wrongfully removed cases (like this case): if an opioid defendant in a wrongfully removed case happens to secure a transfer order from the JPML (*i.e.*, before the district court has an opportunity to remand the case), the case is effectively locked into the "black hole" of the MDL[4] for the indefinite future—even if a winning motion to remand was fully briefed and awaiting decision from the transferor court. Indeed, dozens of remand motions are currently stagnating on the MDL's docket, many of which have been pending since the MDL's creation over a year ago. *See id*, dkt. 4 (deferring decision on 16 then-pending remand motions).

## III.    McKesson's "Snap Removal" to Federal Court

McKesson's plan to obstruct Plaintiffs' case was put into motion even before it—or any Defendant in the case—was served. Plaintiffs' Complaint was filed the morning of February 6, 2019. (*See* Compl.). Just over twenty-four hours later, McKesson filed a notice of removal on February 7, 2019. (*See* Dkt 1 ("Not.")) As McKesson admits, it had not yet been served. (*Id.* ¶ 1.) In its removal papers, McKesson set out its plan to immediately tag this matter for transfer to the MDL. (*Id.* ¶ 12.) By February 13, 2019, a Conditional Transfer Order was issued by the Judicial Panel on Multidistrict Litigation conditionally transferring this matter to the MDL, which Plaintiffs will oppose. In other words, McKesson is employing the same improper delay tactic it has used in other matters: removing—on grounds that no court has endorsed—to keep the case in federal court long enough to obtain transfer to the MDL where it will sit indefinitely.

---

[4]    *See* Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2330 (2008) (according to veteran MDL judge Eldon E. Fallon, the MDL "forum can resemble a 'black hole,' into which cases are transferred never to be heard from again").

## ARGUMENT

**I.    Plaintiffs' Claims Do Not "Arise Under" Federal Law.**

This case was improperly removed because no federal court could have exercised original jurisdiction over it. *See* 28 U.S.C. § 1441(a). As the removing party, McKesson "bears the burden of proving the propriety of removal; doubts regarding removal are resolved in favor of [plaintiffs'] choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013) (citing *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009)); *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [defendant] had to establish that all elements of jurisdiction."). The proponent of removal must meet its burden by a preponderance of the evidence. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Importantly, "federal courts should interpret the removal statute narrowly." *Schur*, 577 F.3d at 758. McKesson has not and cannot carry its burden here.

McKesson's only response is that this Court may exercise federal question jurisdiction over Plaintiffs' state law claims because they "arise under" federal law. (Not. ¶¶ 17–20.) The argument relies on an alternate interpretation of 28 U.S.C. § 1331, a statute that "is invoked by and large by plaintiffs pleading a cause of action created by federal law." *Grable*, 545 U.S. at 12. As Plaintiffs' Complaint lacks any federal claims, however, McKesson tries to shoehorn the claims into § 1331's ambit by arguing that they meet the four prongs of the so-called *Grable* test:

> "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

*Gunn v. Minton*, 568 U.S. 251, 258 (2013). As the Supreme Court has made clear, however, only a "special and small category" of cases meet *Grable*'s standard. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

For decades, the Supreme Court has been clear that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see Empire*, 547 U.S. at 701 ("[I]t takes more than a federal element to open the 'arising under' door.") (citation omitted); *Grable*, 545 U.S. at 314 ("'[F]ederal issue' [is not treated] as a password opening federal courts to any state action embracing a point of federal law."); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) ("Defendants' argument that *Grable* brings within § 1331 all actions in which federal law may play an important role was made to the Supreme Court in *Empire . . .* and squelched."). McKesson nonetheless attempts to use references in the Complaint to a single federal act, the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*, as a password to gain entrance into this Court (Not. ¶ 9), notwithstanding that each cause of action is decidedly a state-law claim that can be resolved independently of any substantial federal question.

District courts have unanimously held that cases against opioid defendants alleging violations of state laws do not "arise under" federal law. *See, e.g., Granite City*, 2018 WL 3408126, at *2 (finding in nearly identical opioid lawsuit that "the *Grable* exception does not apply " and "raises garden-variety state law tort claims"); *Uintah Cty., Utah v. Purdue Pharma, L.P.*, 2018 WL 3747847, at *4 (D. Utah Aug. 7, 2018) (rejecting identical argument in opioid case, finding defendants failed to show any stage of *Grable* progression was met); *see also* (Mot. at 9 n.5, *infra*.) Even the Opioid MDL court ruling on motions to remand brought by state attorneys general (again, all other pending motions to remand not brought by sovereigns have been stayed for over a year) has twice rejected McKesson's arguments that opioid-related claims like these meet *Grable*'s standard and instead remanded. *See Kentucky Remand*, 2019 WL 180246, at *2 (rejecting claim that "the legal duties that [Defendant] is alleged to have violated

6

'arise only under the federal Controlled Substance Act ('CSA') and its implementing regulations'" and collecting cases holding likewise); *In re Nat'l Prescription Opiate Litig.*, 2018 WL 4019413, at *3 (N.D. Ohio Aug. 23, 2018) ("*Montana Remand*") (rejecting argument that state-law claims fell under *Grable* because they referenced FDA regulations). Just as the courts correctly held in those cases, McKesson's argument here founders at every level of *Grable*.

### A.    This case does not "necessarily" raise a federal issue.

First, Plaintiffs' Complaint does not "necessarily raise" a federal issue and consequently fails to satisfy *Grable*'s first prong. This prong is satisfied when "[d]eciding an issue of federal law [is] inescapable." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014) (summarizing *Grable*). Resolution of the federal issue must be an "essential element" of a plaintiff's claim. *Grable*, 545 U.S. at 315 (finding "necessary" prong met when "[t]he meaning of [a] federal tax provision" was "the *only* legal or factual issue contested in the case") (emphasis added); *see Gunn*, 568 U.S. at 259 (finding "necessary" prong met when plaintiff had to demonstrate he would have prevailed in federal patent infringement case). It is not enough that some federal law be implicated, and even "the presence of a claimed violation of the [federal] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814; *Bennett*, 484 F.3d at 910 ("[T]he influence of federal law on the outcome of a contract (or tort) suit is not enough to support the arising-under jurisdiction.").

Here, Plaintiffs can prevail on their state-law claims without the necessary resolution of any federal question. The Complaint is replete with examples of duties solely or concurrently imposed by Illinois law. (*See, e.g.*, Compl. ¶¶ 579–80, 584, 611, 638, 648, 752.) Nevertheless, McKesson argues that even though "Plaintiffs ostensibly plead some of their theories of recovery

7

against McKesson as state law claims, they base the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of" the CSA and that therefore a resolution of whether the CSA has been violated is necessarily required. (Not. ¶¶ 22–28.) McKesson goes on to argue that some allegations "rely *entirely* on federal law . . ." (*Id.* ¶ 27.) But Plaintiffs' Complaint "makes reference to far more than McKesson draws attention to." *Delaware ex rel. Denn v. Purdue Pharma L.P.*, 2018 WL 1942363, at *3 (D. Del. Apr. 25, 2018) (highlighting various theories of recovery under similar allegations that do not depend on federal law) ("*Denn*"). Indeed, McKesson ignores that Plaintiffs allege violations of Illinois laws that impose their own duties *in addition to or independent of* duties imposed by the CSA. *See generally* 225 ILCS 120/55; 720 ILCS 570; 68 Ill. Admin. Code § 1510.50.

As described in the Complaint, Illinois passed its own Controlled Substances Act, 720 ILCS 570, as well as a Wholesale Drug Distribution Licensing Act, 225 ILCS 120, that regulates opiate manufactures, distributors, and prescribers. (Compl. ¶¶ 579, 580.) For example, 225 ILCS 120/55(a)(4) prohibits distributors from "[e]ngaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public[]" and includes no reference to the CSA or its reporting requirements. Section 120/55 and 68 Ill. Admin. Code § 1510.50 provide myriad additional examples of duties described in the Complaint that are separately imposed by Illinois law. *See, e.g.*, 225 ILCS 120/55(a)(16) (proscribing "failing to adequately secure controlled substances or other prescription drugs from diversion"); 68 Ill. Admin. Code § 1510.50(g) (imposing reporting requirements on distributors); 68 Ill. Admin. Code § 1510.50(b) (requiring systems to protect against theft or diversion); 68 Ill. Admin. Code § 1510.50(f) (imposing recordkeeping requirements); *see also* Compl. ¶¶ 579–80, 584, 611, 638, 648, 752.

Thus, "[w]hile a determination of a duty and violation of that duty under the [CSA] will

likely occur in examining [Plaintiffs'] claims, so also will examination of [Illinois] common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent 'diversion' of prescription drugs into illicit channels. And to the extent, if any, that [Plaintiffs'] claims are partially predicated on federal law, federal law would still not be necessarily raised." *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 2018 WL 2943246, at *6 (D.N.M. June 12, 2018) ("*Balderas*") (internal quotations omitted); *Kentucky Remand*, 2019 WL 180246, at *2 (same). Irrespective of whether a duty imposed by the CSA is implicated, a court could still find it negligent, for example, for distributors to allow tens of thousands of pills to flow to the workers Plaintiffs serve. Thus, a court may properly find Defendants' actions violate these Illinois laws—as well as Illinois' Consumer Fraud and Deceptive Business Practices Act— without solely relying (or relying at all) on federal law. (*See, e.g.*, Compl. ¶ 709 ("Moreover, the Distributor Defendants' acts in violation of law *are also business practices that constitute independent violations* of the ICFA." (emphasis added).)

Across the country, courts have universally held near identical allegations insufficient to "necessarily raise" a federal issue under *Grable* and have rejected McKesson's argument.[5] This

---

[5]     *See Tucson Med. Ctr. v. Purdue Pharma LP*, 2018 WL 6629659, at *3 (D. Ariz. Dec. 19, 2018) (finding *Grable* exception unmet, remanding case); *City of Worcester v. Purdue Pharma et al.*, Case No. 4:18-cv-11958-TSH, Dkt. 36, at 7 (D. Mass. Nov. 21, 2018) ("Resolution of the federal issue is not necessary because in addition to having specific statutory duties under the CSA, Defendants concurrently had a common law duty to exercise reasonable care when distributing the drugs. Therefore, a court could resolve all of Plaintiff's claims without any analysis of the CSA."); *City of Reno v. Purdue Pharma, L.P.*, 2018 WL 5730158, at *3–*4 (D. Nev. Nov. 2, 2018) (considering and rejecting identical arguments with respect to each step of the *Grable* progression); *Uintah Cty.*, 2018 WL 3747847, at *6–9 (same); *Weber Cty., Utah v. Purdue Pharma, L.P.*, 2018 WL 3747846, at *1 (D. Utah Aug. 7, 2018) (same); *Oklahoma ex rel. Mike Hunter v. Purdue Pharma, L.P.*, No. 18-cv-574-M, dkt. 53 (D. Okla. Aug. 3, 2018) (same); *Balderas*, 2018 WL 2943246, at *6 (rejecting removal argument and remanding, finding "[p]laintiff could show that [d]efendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the [CSA] is not necessarily raised"); *Denn*, 2018 WL 1942363, at *3 ("Because the claims do not rely solely on Defendants' violations of [the CSA], but rather rely on multiple alternative theories, I find that the federal issues in this case are not necessarily raised."); *W. Virginia ex rel. Morrisey v. McKesson Corp.*, 2017 WL 357307, at *8 (S.D.W. Va. Jan. 24, 2017)

9

includes the Opioid MDL court itself. *Kentucky Remand*, 2019 WL 180246, at \*2 (collecting cases). And, within this Circuit, just last year, the district court in *Granite City, IL v. AmerisourceBergen Drug Corp.*, rejected McKesson's identical attempt to remove an opioid-related lawsuit that McKesson argued was based on violations of the CSA. 2018 WL 3408126, at \*2. The court remanded the case *sua sponte*, finding that "[w]hile the Complaint references some duties or requirements that may also exist under the CSA, those references alone are insufficient to create federal question jurisdiction." *Id.*; *see Granite City, IL v. AmerisourceBergen Drug Corp.*, No. 18-CV-1367-SMY-DGW, dkt. 1-1 ¶¶ 269–72 (July 9, 2018) (alleging violations of 68 Ill. Admin. Code § 1510.50, 225 ILCS 120/40, and 720 ILCS 570/205, referencing the CSA).

McKesson advances its own standard for meeting the "necessarily raised" prong by cobbling together three sentences across two pages of a First Circuit opinion, concluding that "incorporation of a federal law into a state statute necessarily raises an embedded federal question" that will inevitably satisfy *Grable*'s first prong. (Not. ¶ 33 (internal quotation and citation omitted).) But this is the type of standard that was expressly foreclosed by the Supreme Court in *Merrell Dow* and its progeny. 478 U.S. at 813 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); *see Balderas*, 2018 WL 2943246, at \*6 (finding *Grable*'s necessary prong unmet despite incorporation of federal law into the at-issue state statute); *Haith ex rel. Accretive Health, Inc. v. Bronfman*, 928 F. Supp. 2d 964, 970 (N.D. Ill. 2013) ("As *Gunn* makes clear, the fact that

---

(nothing "Plaintiffs' complaint alleges violations of numerous duties implicated by state law[,] including duty to "guard against theft and diversion of controlled substances"); *see also Vincent v. Quality Addiction Mgmt., Inc.*, 2012 WL 404877, at \*6 (E.D. Wis. Feb. 7, 2012) ("[T]he involvement of 42 C.F.R. § 8.12 in [plaintiff's] claims is not sufficient to establish that this matter arises under federal law. Consequently, this Court lacks federal question jurisdiction . . . ."); *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 597 (S.D.N.Y. 2011) (finding first prong of *Grable* unmet in opioid-related allegations referencing federal Medicaid standards, collecting cases).

Plaintiffs' state law claims turn in part on the application of federal laws—the HIPAA, the

HITECH Act, the FDCPA, and the federal securities laws—is not enough to satisfy *Grable*.").

      As explained, it is not enough that a federal law is somehow referenced or incorporated

into the at-issue statute. Rather, determining liability must be totally and inextricably linked to

the federal law to meet *Grable*'s first prong.[6] *Manning v. Merrill Lynch Pierce Fenner & Smith,*

*Inc.*, 772 F.3d 158, 164 (3d Cir. 2014) ("[E]ven if [p]laintiffs' claims were *partially* predicated

on federal law, federal law would still not be necessarily raised.") (emphasis in original); *see*

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) ("[A] claim supported by

alternative theories in the complaint may not form the basis for [federal] jurisdiction unless

[federal] law is essential to *each* of those theories.") (emphasis added). Just as the "Supreme

Court found no federal subject matter jurisdiction under analogous facts where plaintiffs directly

claimed the defendant's alleged breach of a federal drug labeling statute established the

defendant had been negligent per se and that negligence was the proximate cause of the injuries

alleged in the consolidated cases," *Uintah Cty.*, 2018 WL 3747847, at *6, the presence of a

necessary federal question is equally lacking here.

      At base, McKesson's attempt to draw attention away from the independent state-law

duties and claims alleged in the Complaint to singularly focus on whether the the CSA has been

---

[6]    The cases McKesson looks to for support only underscore the requirement that the claims turn
*exclusively* on an interpretation of federal law for federal jurisdiction to be appropriate. *See NASDAQ
OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014) (finding in a split decision that the
"singular duty" underlying plaintiff's claim hinged on interpreting a provision of the Securities Exchange
Act); *Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (finding prong met when "plaintiffs
must show that the Secretary [of the Interior]'s advance approval is required under federal law" to prevail
on particular conversion theory); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585
F.3d 42, 49 (1st Cir. 2009) (finding prong met when "it is not logically possible for the plaintiffs to prevail
on this cause of action without affirmatively answering the embedded question of whether federal law
[applies]"); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding prong met when
plaintiff could not prevail without demonstrating that defendant "in fact violated" a federal provision). As
Plaintiffs can recover on each of their claims irrespective of proving any violation of federal law, a federal
issue is not necessarily raised. To be sure, McKesson hasn't included a single citation endorsing its view.

invoked and exclusively applies is impermissible and cannot support its argument. As one court

rejecting McKesson's *Grable* analysis recently stated:

> The validity of the alleged independent sources of the Distributors' duties is not
> an issue for this court. At this stage, involving subject matter jurisdiction
> determinations, Plaintiffs are the masters of their claims−whether eventually
> successful on the merits or not. Thus, even assuming the court could discern that
> those independent bases for claimed duties would ultimately fail—which it
> cannot—this conclusion would not preclude a finding that federal subject matter
> jurisdiction is lacking and that the case demands remand.

*Uintah Cty.*, 2018 WL 3747847, at *6; *Kentucky Remand*, 2019 WL 180246, at *2 (reiterating

that even if claims are "partially predicated on federal law" that "federal law would still not be

necessarily raised"). The first *Grable* prong is not met.

**B.      No federal issue is "actually in dispute" here.**

Second, while McKesson says it disputes the "scope and existence" of its duties under the

CSA in a single paragraph, (Not. ¶ 39), it "has not identified any provision of the broad

regulation that is 'actually disputed.'" *Vincent*, 2012 WL 404877, at *6 (citing *Grable,* 545 U.S.

at 314); *Uintah Cty.*, 2018 WL 3747847, at *6 ("McKesson fails to identify a specific provision

in the CSA which will require interpretation or construction by any court."). Thus, "[w]ithout a

clearly identified federal opioid standard subject to a live dispute in this case, jurisdiction

under *Grable* is inappropriate." *Vincent*, 2012 WL 404877, at *6. What's more, by disputing the

existence of any duty imposed by federal law, it is undermining its own basis for removing the

case in the first place. *W. Virginia ex rel. Morrisey*, 2017 WL 357307, at *7 ("[McKesson]

undermines its own argument by calling into question the existence of the duty in which it finds

the only source of federal question jurisdiction."). And, here again, McKesson fails to present a

single case endorsing its view. Thus, the second *Grable* prong is clearly not met either.

12

### C. This case does not present any "substantial" federal issues.

Third, the federal issue identified by Defendants is not "substantial" under *Grable*, which looks "to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260 (finding an insubstantial federal question); *see Grable*, 545 U.S. at 315 (finding question of whether the federal government could collect tax a substantial issue); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921) (finding substantial question when resolution of state-law claim turned on constitutionality of act of Congress). When McKesson notes litigation will "minimiz[e] uncertainty over reporting obligations," (Not. ¶ 40), the truth is that such litigation will impact future litigants' expectations, not the machinations of the federal government. As the court in *Balderas* held, "[e]ven if there was a violation of the [CSA], its promulgated rules, and the DEA's interpretation of the statute, no large-scale federal interests of the kind in *Grable*—the tax code—are implicated by such a violation." 2018 WL 2943246, at *6; *see Montana Remand*, 2018 WL 4019413, at *3 (finding that "even if [plaintiff] had [specifically asserted a violation of the federal act], *Merrell Dow* instructs that this would still not be substantial enough to warrant federal question jurisdiction"); *Denn*, 2018 WL 1942363, at *4 ("[W]hether Defendants violated the FCSA is not substantial to the government as a whole. Most importantly, the parties do not seek to interpret the FCSA such that it affects the manner in which the *government* operates.") (emphasis added); *Uintah Cty.*, 2018 WL 3747847, at *7 (McKesson's "entire argument on this point [that the case presents a question of law governing other cases] conclusory" and noting the "court cannot give it significant weight"). "Plaintiff[s'] claims will be 'fact-bound and situation-specific' and do not readily present a pure issue of law which federal adjudication could resolve 'once and for all.'" *Balderas*, 2018 WL 2943246, at *6 (citing *Empire*, 547 U.S. at 570–71).

In addition, "the absence of a federal cause of action weighs heavily in favor of remanding a state cause of action to state court." *Denn*, 2018 WL 1942363, at *4; *Merrell Dow*, 478 U.S. at 814 (taking "the congressional determination that there should be no federal remedy for the violation of this federal statute" as evidence that "a claimed violation of the [federal] statute as an element of a state cause of action is insufficiently 'substantial'"). Facing these hurdles, McKesson presents no authority holding that the CSA's interpretation affects the federal system so substantially as to meet *Grable*'s third prong.

### D. Assertion of federal jurisdiction would upset the congressionally approved balance of federal and state judicial responsibilities.

Finally, McKesson asks the Court to open itself to "a horde of original filings and removal cases" by upsetting the balance between the federal and state jurisdiction. *Grable*, 545 U.S. at 318. Endorsing a "general rule of exercising federal jurisdiction over state claims resting on federal . . . statutory violations [could] herald[] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319. "If the [CSA] standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action."[7] *Denn*, 2018 WL 1942363, at *5 (rejecting McKesson's argument and finding fourth *Grable* element lacking); *Balderas*, 2018 WL 2943246, at *6 (same).

Instead, *Grable* advocated for "[treating] the missing cause of action . . . as a missing welcome mat" to federal jurisdiction. *Grable*, 545 U.S. at 318, 319 (endorsing *Merrell Dow*'s view that it was "improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating [that] federal law" and

---

[7] As the *Uintah Cty.* court found, "[t]he Complaint's brief discussion of the Distributors' alleged violations of the CSA—whether as mere factual context, or evidence of their breach of a duty (as the *Merrell Dow* plaintiffs had used the FDCA)—cannot give rise to federal jurisdiction in an action involving only state law tort and statutory claims, particularly where doing so would almost certainly give rise to a flood of federal court original and removed filings." 2018 WL 3747847, at *8.

noting state-law causes of action regularly rely on some element of federal law without the case being removable); *City of Reno*, 2018 WL 5730158, at *4 (same). The competing interest of the various states is also clearly recognized in these cases: states across the country have taken it upon themselves to adopt their own regulations—like the Illinois CSA—to govern the handling of opioids and other controlled substances within their borders. *See, e.g.*, 225 ILCS 120/55. Here, finding federal jurisdiction over state-law claims that merely refer to the CSA is a "threat to the structural division of labor between state and federal courts." *Denn*, 2018 WL 1942363, at *5.

As for McKesson's concern that state courts may apply federal requirements inconsistently with the DEA, (Not. ¶ 43), "state courts can be expected to hew closely to the pertinent federal precedents." *Gunn*, 568 U.S. at 262 (dismissing concern that the federal judiciary's greater familiarity with a federal issue meant the case belongs in federal court). McKesson's convoluted argument that Plaintiffs are somehow attacking the DEA's "entire regulatory scheme" (Not. ¶ 36 (citation omitted)) is both illogical and reflects allegations that appear nowhere in the complaint and thus cannot be considered. *See Merrell Dow*, 478 U.S. at 808 (noting that arising under jurisdiction must depend on the "well-pleaded complaint"). In any event, the Opioid MDL court rejected McKesson's argument that similar state-law, opioid-related claims would call into question another agency's—there the Food and Drug Administration—decisions: "Far from 'asking the Court to second guess the validity of the [FDA's] decision,' if the court were to grant [the relief requested], neither the FDA's decision-making process nor its approved labeling would be implicated." *Montana Remand*, 2018 WL 4019413, at *3. Similarly here, the Complaint does not threaten the DEA's regulatory scheme with respect to the CSA.

"Simply put, this case as pleaded raises garden-variety state law tort claims." *Granite*

15

*City, IL*, 2018 WL 3408126, at \*2. McKesson fails to meet *Grable*'s final prong.

## CONCLUSION

The list of courts around the country that have rejected McKesson's invitation to find federal question jurisdiction over nearly identical opioid-related claims is speedily growing. (*See* Mot. 9 n.5, *supra*). By contrast, McKesson does not point to a single court endorsing its views and refusing to remand opioid-related state-law causes of action. (*See generally* Not.) Because this case "cannot be squeezed into the slim category *Grable* exemplifies[,]" *Empire*, 547 U.S. at 701, this Court can appropriately follow the growing body of authority on these issues and grant Plaintiffs' motion to remand.

Respectfully submitted,

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, MIDWEST OPERATING ENGINEERS HEALTH AND WELFARE FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS,** and **CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND**,

Dated: February 14, 2019      By: /s/ Benjamin H. Richman
           One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

16

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin H. Richman, hereby certify that on February 14, 2019, I served the above and foregoing ***Memorandum of Law in Support of Plaintiffs' Motion for Remand to State Court***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 14th day of February 2019.

/s/ Benjamin H. Richman